UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
REBECCA LAREW                                        :

                    Plaintiff,                       : 11 Civ. 5771 (BSJ) (GWG)

          -v.-                                       : OPINION AND ORDER

ANDREW LAREW et al.                                  :

                    Defendants.                      :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

          Plaintiff Rebecca Larew ("Rebecca") has brought suit against her former husband

Andrew Larew ("Andrew"); Tony Fiorito; John Funiciello; Christine Wojcik; Alan Doyle;

Charles Sangster; John Shannon; Paula Deckman; Central New York Associates, LLC ("CNY");

Atrium Associates, LLC ("Atrium"); 224 Harrison Associates, LLC ("Harrison"); Armory

Associates, LLC ("Armory"); 65-35 Queens Associates, LLC ("Queens"); 460 North Franklin

Street Associates, LLC ("Franklin"); 1401 Erie Boulevard East, LLC ("Erie"); Vinegar Hill,

LLC ("Vinegar Hill"); Brittonfield Associates, LLC ("Brittonfield"); Soundview Real Estate

Partners ("Soundview"); and Larew, Doyle & Associates, LLC ("LDA") (collectively, "the

defendants") pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. § 1961 et seq., and state law.  The defendants have filed a motion pursuant to 28 U.S.C.

§ 1404(a) seeking to transfer the case to the United States District Court for the Northern District

of New York.  For the following reasons, defendants' motion is granted.

I.      BACKGROUND

     A.      Procedural History

This action started when plaintiff filed a complaint in the Supreme Court of the State of

New York, County of New York.  See Summons and Complaint, filed July 18, 2011 (annexed as

Ex. A to Notice of Removal, filed Aug. 18, 2011 (Docket # 1) ("Notice of Removal"))

("Compl.").  The defendants removed the case to United States District Court for the Southern

District of New York (the "Southern District").  See Notice of Removal.  Shortly thereafter, the

defendants filed the instant motion seeking a transfer of the action to the United States District

Court for the Northern District of New York (the "Northern District").[1]

     B.      Facts Relevant to Venue

          1.      Allegations in the Complaint

The complaint alleges that defendants have acted as a criminal organization to deprive

Rebecca of money which was awarded to her in her divorce action against Andrew in

Connecticut state court.  See Compl. ¶¶ 3, 5, 41.  Specifically, Rebecca argues that Andrew and

his co-defendants conspired to hide his assets, thereby lowering the amount he would have to

pay under the court-ordered support agreement in their divorce proceeding.  See id. ¶¶ 1, 3, 4,

---

     [1] See Notice of Motion to Change Venue to the District Court for the Northern District of
New York, filed Sept. 8, 2011 (Docket # 23); Memorandum of Law in Support of Defendants'
Motion to Change Venue to the District Court for the Northern District of New York, filed Sept.
8, 2011 (Docket # 24) ("Def. Mem. of Law"); Affidavit of Anthony F. Fiorito, filed Sept. 8,
2011 (Docket # 25) ("Fiorito Aff.").  Plaintiff submitted papers in opposition, see Affidavit of
Rebecca Larew, filed Nov. 1, 2011 (Docket # 49) ("Rebecca Aff."); Declaration of Richard
Freeth in Support of Plaintiff's Opposition to the Motion for Change of Venue, filed Nov. 1,
2011 (Docket # 50) ("Freeth Decl."); Opposition to Motion to Change Venue to the District
Court for the Northern District of New York, filed Nov. 1, 2011 (Docket # 51) ("Opp. Mem."),
and defendants submitted reply papers, see Reply Memorandum of Law in Further Support of
Defendants' Motion to Transfer Venue, filed Nov. 14, 2011 (Docket # 59) ("Reply"); Affidavit
of Andrew Larew, filed Nov. 14, 2011 (Docket # 60) ("Andrew Aff.").

42, 48, 55.  The complaint asserts the following claims: (1) RICO; (2) fraud; (3) conversion; (4) violation of the New York State Debtor and Creditor Law; and (5) "prima facie tort – economic injury."  See Compl. ¶¶ 86-118.

2.      The Parties

Rebecca is a resident of Southport, Connecticut.  Id. ¶ 7.  At the time of the filing of her opposition papers on this motion, Rebecca's sole income was a $5,500 monthly support payment, which was scheduled to end on October 20, 2011.  Rebecca Aff. ¶ 3.  While Rebecca states that she is a "divorced stay-at-home mother," id., Andrew was awarded "sole legal and physical custody" of their children on July 1, 2011, Andrew Aff. ¶¶ 4, 5.

Andrew is a "real estate developer with interests throughout New York State."  Compl. ¶ 8.  He is currently married to defendant Wojcik.  Id. ¶ 11.  Andrew and Wojcik currently reside in New York, New York, id. ¶¶ 8, 11, in the Southern District, although they did not live there during the time period of most of the events in the complaint, see Andrew Aff. ¶ 7.  Defendants Fiorito and Funiciello are friends and business associates of Andrew's.  Compl. ¶¶ 9, 10. Funiciello resides in Baldwinsville, New York, id. ¶ 10, which is located in the Northern District.  Fiorito resides in Liverpool, New York, Fiorito Aff. ¶ 3, which is also located in the Northern District.  Defendant Doyle is a friend and business associate of Andrew's.  Compl. ¶ 12.  His business address is in Providence, Rhode Island, id., though he has a business based in New York County in the Southern District, see Freeth Decl. ¶ 4.  Defendant Sangster is a business partner of Andrew's.  Compl. ¶ 13.  He resides in Manlius, New York, id., which is in the Northern District.  Defendant Shannon is an accountant for Andrew.  Id. ¶ 14.  His last known business address was in Oneida, New York, id., which is also in the Northern District. Defendant Deckman is another accountant for Andrew.  Id. ¶ 15.  Her principal place of business

3

is in Syracuse, New York, id., which is also in the Northern District.

Defendants CNY, Atrium, Harrison, Armory, Queens, Franklin, Erie, Vinegar Hill, and Brittonfield are New York limited liability companies.  Id. ¶¶ 16-24.  Their principal places of business are in Syracuse, New York, id., in the Northern District.  Defendant Soundview is a Delaware limited liability company.  Id. ¶ 25.  Its principal place of business is in Stamford, Connecticut.  Id.  Defendant LDA is a New York limited liability company.  Id. ¶ 26.  Its principal place of business is in New York, New York, id., which is in the Southern District.

Defendants Atrium, Harrison, Armory, Vinegar Hill, Franklin, Erie, and Queens are single purpose entities each of which "owns a single project."  Fiorito Aff. ¶ 13.  They keep their books and records, including financial information and official corporate records, in Syracuse, New York, Fiorito Aff. ¶ 6, which is in the Northern District.  They are managed by a management company, Partnership Properties, which also has its principal office in Syracuse, New York, and keeps its books and records there.  Id. ¶¶ 7-10.  Defendant Vinegar Hill owns property in Oswego, New York, id. ¶ 13(d), which is located in the Northern District.  Defendant Brittonfield owns property in Dewitt, New York, id. ¶ 69, which is also located in the Northern District.  Defendants Atrium, Harrison, Armory, Franklin, and Erie each own property in Syracuse, New York, Fiorito Aff. ¶¶ 13(a)-(c), (e), (f), in the Northern District.  Queens owns a building in Queens, New York, id. ¶ 13(g), which is located in the Eastern District of New York.  Defendant LDA owns property in Killington, Vermont.  Compl. ¶ 70.

II.   DISCUSSION

A.   Law Governing Motions to Transfer to Another Judicial District

Absent the consent of all parties, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought."  28 U.S.C. §

1404(a).  Thus, the decision whether to transfer a case from one judicial district to another absent

unanimous consent requires a two-part inquiry.  First, the court must determine whether the case

sought to be transferred could have been brought in the proposed transferee court.  Second, the

court must decide whether transfer is warranted for the convenience of parties and witnesses and

is in the interest of justice.  See, e.g., Whitehaus Collection v. Barclay Prods., Ltd., 2011 WL

4036097, at *1 (S.D.N.Y. Aug. 29, 2011); Matta v. Roswell Park Cancer Inst. Corp., 2011 WL

3104889, at *3 (S.D.N.Y. July 26, 2011).  Here, it is undisputed that this action could have been

brought in the Northern District.  Therefore, only the second part of the inquiry is at issue.

     The Second Circuit has held that "courts should give deference to a plaintiff's choice of

forum."  Iragorri v. United Techs. Corp., 274 F.3d 65, 70 (2d Cir. 2001).  Nonetheless, "if the

balance of conveniences suggests that trial in the chosen forum would be unnecessarily

burdensome for the defendant or the court, dismissal is proper."  Id. at 71 (citations omitted).

Whether transfer should occur is "determined upon notions of convenience and fairness on a

case-by-case basis."  In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) (citing

Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)); accord Orb Factory, Ltd. v. Design Sci.

Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998).  The moving party must make a "clear and

convincing" showing that the balance of convenience favors transfer.  N.Y. Marine & Gen. Ins.

Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010).  The Second Circuit has noted

that among the factors to be considered in determining whether to grant a motion to transfer

venue are the following:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the
> location of relevant documents and relative ease of access to sources of proof, (4)
> the convenience of parties, (5) the locus of operative facts, (6) the availability of

process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

Id. at 112 (citations omitted).  Courts have also considered "(8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice." Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011); accord AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1, 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009).

"There is no rigid formula for balancing these factors and no single one of them is determinative.  Instead, weighing the balance is essentially an equitable task left to the Court's discretion." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citations and internal quotation marks omitted).  While the list of factors is not exhaustive, see Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001), no party has suggested that any other factor should be considered.

      B.     Application of the Section 1404(a) Factors

          1.     Convenience of the Parties and Non-Party Witnesses

"The convenience of parties and witnesses is considered the essential criteri[on] under the venue statute." In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (quoting Cento Grp., S.p.A. v. OroAmerica, Inc., 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993)) (bracketing added and internal quotation marks omitted); accord AGCS Marine Ins. Co. v. Associated Gas & Oil Co., 775 F. Supp. 2d 640, 647 (S.D.N.Y. 2011); Seltzer v. Omni Hotels, 2010 WL 3910597, at *2 (S.D.N.Y. Sept. 30, 2010); Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991).  We first address the convenience of the parties and then the convenience of non-party witnesses.

6

a.    <u>Convenience of Parties</u>

The convenience of the parties weighs heavily in favor of transfer in this case.  Of the twenty parties to this case, only three, Andrew, Wojcik, and LDA, are currently located in the Southern District.  Compl. ¶¶ 8, 11, 26.  Notably, all three have joined in the motion to transfer venue to the Northern District.  <u>See</u> Def. Mem. of Law at 3, 7.  Three parties, Rebecca, Doyle, and Soundview are located in neither the Northern District nor the Southern District.  <u>See</u> Compl. ¶¶ 7, 12, 25.  Both Doyle and Soundview join in the motion for a change of venue.  Def. Mem. of Law at 7.  The remaining fourteen parties are all located in the Northern District.  Compl. ¶¶ 9, 10, 13-24.

In other words, of the twenty parties in this case, only Rebecca seeks to have it remain in the Southern District.  Rebecca argues the transfer is inappropriate because it would merely "shift inconvenience" from one party to another.  Opp. Mem. at 4.  However, Rebecca is not located in the Southern District, and therefore the inconvenience to her of moving from the Southern District to the Northern District is given less weight.  <u>See</u>, <u>e.g.</u>, <u>Deshoulieres, S.A. v. Cuthbertson Imports, Inc.</u>, 2006 WL 2849818, at *3 (S.D.N.Y. Oct. 3, 2006) (unimportant to foreign plaintiff if it litigates in New York or Connecticut as both are equally inconvenient); <u>Dr. Boy, GmbH v. Nationwide Ins.</u>, 1996 WL 350699, at *2 (S.D.N.Y. June 25, 1996) (inconvenience of a foreign corporation with no presence in New York "is 'at best a neutral factor.'") (quoting <u>Matra et Manurhin v. Int'l Armament Co.</u>, 628 F. Supp. 1532, 1535 (S.D.N.Y. 1986)); <u>GE Capital Franchise Fin. Corp. v. Cosentino</u>, 2009 WL 1812821, at *4 (W.D.N.Y. June 25, 2009) (transfer would not shift inconvenience because plaintiff would have to travel to either venue).  The Court recognizes that Rebecca lives closer to the courthouses in

7

the Southern District than to the courthouses in the Northern District.  Nonetheless, because the

vast majority of the parties are located in the Northern District, and no party residing outside the

Northern District objects to the transfer, this factor strongly favors transfer.

    b. Convenience of Witnesses

  "Courts typically regard the convenience of witnesses as the most important factor in

considering a § 1404(a) motion to transfer."  Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp.

2d 282, 286 (S.D.N.Y. 2004); accord AGCS Marine Ins. Co., 2011 WL 1325996, at *5; Seltzer,

2010 WL 3910597, at *2; Clay Paky, S.p.A. v. Vari-Lite, Inc., 2000 WL 977709, at *7

(S.D.N.Y. July 14, 2000).  "In evaluating this factor, the court should 'look beyond the quantity

of witnesses and assess the quality of the testimony to be offered.'"  DealTime.com, Ltd. v.

McNulty, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (quoting Am. Alliance Ins. Co. v. Sunbeam

Corp., 1999 WL 38183, at *6 (S.D.N.Y. Jan. 28, 1999)); accord Fifth Ave. of Long Island Realty

Assocs. v. Caruso Mgmt. Co., 2009 WL 412126, at *15 (E.D.N.Y. Feb. 17, 2009) (citations

omitted).  Accordingly, the movant "must clearly specify the key witnesses to be called and must

make a general statement of what their testimony will cover."  Factors Etc., Inc. v. Pro Arts, Inc.,

579 F.2d 215, 218 (2d Cir. 1978), cert. denied, 440 U.S. 908 (1979); accord LeCroy Corp. v.

Hallberg, 2010 WL 3958761, at *6 (S.D.N.Y. Oct. 4, 2010).  This may be satisfied by "a very

general indication of [the witnesses'] role in the transaction at issue, and thus, by implication, of

their testimony," although it is preferable for the moving party to submit "a more elaborate

statement of probable testimony."  Arrow Elecs. Inc. v. Ducommun Inc., 724 F. Supp. 264, 267

n.1 (S.D.N.Y. 1989); see generally Fellner v. Cameron, 2010 WL 681287, at *3 (W.D.N.Y. Feb.

24, 2010) ("[A] party will not be held to the requirement of stating with precision each witness

and document.") (citations and internal quotation marks omitted).  Still, "a specific showing is

required only when the movant seeks a transfer <u>solely</u> 'on account of the convenience of witnesses.' . . . [If the movant] seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." <u>Connors v. Lexington Ins. Co.</u>, 666 F. Supp. 434, 455 (E.D.N.Y. 1987) (emphasis in original) (quoting <u>Factors Etc., Inc.</u>, 579 F.2d at 218); <u>accord</u> <u>Beckerman v. Heiman</u>, 2006 WL 1663034, at *5 (S.D.N.Y. June 16, 2006).

Here, defendants identify defendant Fiorito and defendant Shannon as potential witnesses, both of whom reside in the Northern District. <u>See</u> Def. Mem. of Law at 6-7. Defendants' papers state that Fiorito is the "managing member" of Atrium, Harrison, Armory, Vinegar Hill, Franklin, Erie and Queens, while Shannon is the accountant of the same entities. <u>See</u> <u>id.</u> Defendants also mention non-parties James Funiciello Sr. and Kristen Exner as potential witnesses. <u>See</u> Def. Mem. of Law at 7; Fiorito Aff. ¶ 12. Funiciello Sr. and Exner assist in "collecting the rents, paying the bills and preparing records and reports for [Atrium, Harrison, Armory, Vinegar Hill, Franklin, Erie and Queens.]" Fiorito Aff. ¶ 12. They both live in the Northern District. <u>Id.</u>

Rebecca has not identified any non-party witness who reside in the Southern District. She identifies as "key witnesses" all of the defendants living outside the Northern District – that is, Andrew, Wojcik, Doyle, Soundview, and LDA. <u>See</u> Opp. Mem. at 5-6; Freeth Decl. ¶¶ 2-6. But she fails to provide any specifics on these witnesses' roles in the transactions, or their general testimony. More importantly, all of them consent to the transfer of venue to the Northern District. <u>See</u> Def. Mem. of Law at 3, 7. Thus, the convenience of the witnesses identified by Rebecca should not play a part in the analysis.

Accordingly, this factor too weighs heavily in favor of transfer. <u>See</u> <u>Herbert Ltd. P'ship</u>, 325 F. Supp. 2d at 286, 292 (ordering transfer to district where majority of party and non-party

witnesses reside).

    2.    <u>Location of Documents and Ease of Access to Sources of Proof</u>

"In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.  Furthermore, the location of documents is entitled to little weight unless [the movant] makes a detailed showing of the burden it would incur absent transfer."  <u>Seltzer</u>, 2010 WL 3910597, at *4 (citations and internal quotation marks omitted); <u>accord</u> <u>K.M. v. Maclaren USA, Inc.</u>, 2011 WL 1900137, at *3 (S.D.N.Y. Apr. 7, 2011).  Here, neither party has indicated that transmitting documents or other physical evidence would be particularly burdensome.  Moreover, inasmuch as the operative facts alleged in the complaint occurred in the Northern District, it is likely that the sources of proof are located within that district.  Accordingly, this factor weighs in favor of transfer.  <u>See</u> <u>Seltzer</u>, 2010 WL 3910597, at *4.

    3.    <u>Location of the Operative Facts</u>

The location of a case's operative facts has been considered by some courts as a "primary factor in determining a § 1404(a) motion to transfer."  <u>Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.</u>, 245 F. Supp. 2d 523, 525-26 (S.D.N.Y. 2003) (internal quotation marks omitted); <u>accord</u> <u>Seltzer</u>, 2010 WL 3910597, at *4.  Rebecca asserts that "the principal acts alleged in the action occurred in [the Southern District]."  Opp. Mem. at 4.  However, it is unclear which of the operative facts Rebecca believes occurred in the Southern District and the complaint itself provides few indications of such facts.  The defendants contend that the subject matter of the dispute took place in Onondaga County, <u>see</u> Def. Mem. of Law at 3, which is located in the Northern District.

The complaint alleges a conspiracy among the defendants to deprive Rebecca of money

that was otherwise owed to her.  See Compl. ¶¶ 27-85.  In conspiracy cases, courts may look to where the transactions at issue occurred in determining the locus of operative facts.  See S.E.C. v. Lybrand, 2000 WL 913894, at *6 (S.D.N.Y. July 6, 2000) (New York was locus of operative facts because "transactions that constituted the core of the fraudulent scheme under the SEC's theory of liability were undertaken by [defendant] in New York."); cf. United States v. Nature's Farm Prods., Inc., 2004 WL 1077968, at *5 (S.D.N.Y. May 13, 2004) (New York was not locus of operative facts because core transactions took place in California and only two alleged actions took place in New York).  Here, there are no allegations as to where the transactions actually took place.  Of the nineteen defendants, only three, Andrew, Wojcik, and LDA, have ever been located in the Southern District, see Compl. ¶¶ 8, 11, 26, and Andrew and Wojcik did not live there until July 2009, Andrew Aff. ¶ 7, long after most of the events alleged in the complaint. The other defendants are all located in the Northern District or the Districts of Rhode Island, Delaware, or Connecticut.  See Compl. ¶¶ 9-10, 12-25.

The allegations in the complaint center around Andrew hiding assets and interests by presenting false documents to the Connecticut court handling his divorce in order to lower the amount he had to pay his ex-wife.  See Compl. ¶¶ 1-3.  "When examining claims for misrepresentation on a motion to transfer venue, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.'" Branthover v. Goldenson, 2011 WL 6179552, at *3 (S.D.N.Y. Dec. 12, 2011) (quoting In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d at 404).  Here the misrepresentations occurred in two locales: (1) the District of Connecticut, when Andrew allegedly presented false testimony and evidence during the Connecticut divorce proceedings, see Compl. ¶¶ 35, 36, 55; and (2) the Northern District, where tax filings and other financial documents were created allegedly to

11

minimize Andrew's assets and income, see id. ¶¶ 68, 84, 85; Fiorito Aff. ¶¶ 7-9, 11, 12.

Courts have also interpreted the locus of operative facts as "the place where events and actors material to proving liability are located." Amardeep Garments Indus. Pvt. Ltd. v. Cathay Bank, 2011 WL 1226255, at *3 (S.D.N.Y. Mar. 23, 2011). Rebecca argues in her motion papers that Andrew is "the locus of this fraud." See Opp. Mem. at 3. But Andrew did not live in the Southern District until July 2009. Andrew Aff. ¶ 7. Virtually all of the allegations of the complaint concern events that took place prior to that date. See generally Compl. ¶¶ 27-74. Moreover, in her complaint Rebecca alleges that CNY "is pivotal to the scheme as it is [] the central business entity through which [Andrew] perpetrated, and continues to perpetrate, the fraudulent scheme." Id. ¶ 46. Yet CNY is alleged to have its principal place of business in the Northern District. Id. ¶ 16. All of the other defendants, with the exception of LDA and Wojcik, id. ¶¶ 11, 26, are similarly located outside of the Southern District, with the vast majority located in the Northern District, see id. ¶¶ 9, 10, 12-25.

Finally, the allegations of the complaint suggest that any misrepresentations were made in either the Northern District, see id. ¶¶ 68, 84, 85; Fiorito Aff. ¶¶ 7-9, 11, 12, or Connecticut, Compl. ¶¶ 35, 36, 55. The complaint alleges no operative facts that occurred within the Southern District. Therefore, this factor weighs strongly in favor of transfer. See Ill. Union Ins. Co. v. NRG Energy, Inc., 2010 WL 5187749, at *2-3 (S.D.N.Y. Dec. 6, 2010) (granting motion to transfer where no operative facts in complaint occurred in forum district); Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005) (transferring case to Pennsylvania even where "it is unclear whether Pennsylvania is the locus of operative facts [because] it is clear that New York is not" and holding that "[w]here there is no material connection between the district and the operative facts, . . . the interests of justice require the

transfer of [the] action") (citation and internal quotation marks omitted).

### 4.     Availability of Process to Compel Unwilling Witnesses

Here, neither party has presented evidence that any non-party witnesses would not be subject to process in the Northern District.  Therefore, there is no reason to believe that one court is better situated than the other to compel the testimony of unwilling witnesses.

### 5.     Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998); accord Zinky Elecs. LLC  v. Victoria Amplifier Co., 2009 WL 2151178, at *7-8 (D. Conn. June 24, 2009).  However, this factor will be accorded "little or no significance" absent a showing of disparity of means between plaintiffs and defendants.  Hernandez, 761 F. Supp. at 989; accord Emblaze Ltd. v. Apple, Inc., 2011 WL 724275, at *4 (S.D.N.Y. Feb. 25, 2011).  While Rebecca contends that the Court should take this factor into account, see Opp. Mem. at 6; Rebecca Aff. ¶¶ 3, 4, she has failed to provide the Court with any details of her financial status.  Rebecca does contend that she will have to retain new counsel if the matter is transferred.  See Opp. Mem. at 6.  But it is more than likely that an attorney located in the Northern District would charge lower rates than an attorney in the Southern District.  See generally Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 185-86 (2d Cir. 2008) (taking as established that attorneys in the Southern District charge "higher rates than those prevailing in the Northern District of New York").  In any event, there is no indication that current counsel would be unable to appear pro hac vice in the Northern District or that Rebecca would be unable to pay the incremental costs associated with a transfer, such as traveling expenses for her attorney.

13

6.     Forum's Familiarity with the Governing Law

Both the transferor and the transferee courts are located within New York and thus are

familiar with New York law.  Accordingly, this factor does not weigh in either party's favor.

7.     Plaintiff's Choice of Forum

District courts deciding transfer motions have noted that "[a] plaintiff's choice of forum

is generally entitled to considerable weight and should not be disturbed unless the balance of the

factors is strongly in favor of the defendant.  Where the factors are equally balanced, the plaintiff

is entitled to its choice." Berman, 30 F. Supp. 2d at 659 (citations omitted); accord In re

Warrick, 70 F.3d 736, 740-41 (2d Cir. 1995) ("[Plaintiff's] choice of venue [is] entitled to

substantial consideration.") (citation and internal quotation marks omitted); WorldCare Ltd. v.

World Ins. Co., 767 F. Supp. 2d 341, 363 (D. Conn. 2011).  However, "plaintiffs' choice of

forum is accorded less weight where the plaintiffs' chosen forum is neither their home nor the

place where the operative facts of the action occurred." Dwyer v. Gen. Motors Corp., 853 F.

Supp. 690, 694 (S.D.N.Y.1994); accord Emp'rs Ins. of Wausau v. News Corp., 2008 WL

4443899, at *3 (S.D.N.Y. Sept. 29, 2008) ("[W]here the plaintiff has chosen a forum that is

neither the district of its residence, nor the locus of the operative facts in the case, this choice is

given considerably less weight."); Kwik Goal, Ltd. v. Youth Sports Publ'g Inc., 2006 WL

1517598, at *2 (S.D.N.Y. Mar. 31, 2006) (Plaintiff's choice of forum was entitled to "less

deference" where the forum was not plaintiff's "home state" and "the case lack[ed] material or

significant contacts with the forum state" because "no one involved in th[e] litigation [was]

located in the SDNY" and the sales in the district "were minimal."); ZPC 2000, Inc. v. SCA

Grp., Inc., 86 F. Supp. 2d 274, 280 (S.D.N.Y. 2000) ("[W]hen a plaintiff brings a suit . . . in a

forum that has no material connection with the action, this factor should be given little weight.")

14

(internal quotation marks and citations omitted) (alteration in original).

In the instant case, plaintiff does not reside in the Southern District.  Nor, as previously discussed, did the operative facts occur in the Southern District.  Accordingly, plaintiff's choice of forum is accorded little weight.

8. <u>Trial Efficiency and Interest of Justice</u>

Defendants argue that the case is "likely to proceed to trial more rapidly in the [Northern District] than in this Court."  Def. Mem. of Law at 8.  In support of this argument, the defendants present statistics showing that the median time to trial in the Northern District is 25.8 months as opposed to 30.9 months in this Court.  <u>Id.</u> at 8-9 (citing Admin. Office of the U.S. Courts, <u>Fed. Judicial Caseload Statistics: March 31, 2010</u>, Table C-5 (2010)).  Rebecca does not dispute this assertion.  Accordingly, this factor weighs in favor of transfer.

C. <u>Result of Balancing of the Factors</u>

A balancing of the factors easily leads to the conclusion that this case should be transferred to the Northern District.  With respect to the most important factors, it would be more convenient to the parties and nonparty witnesses for this case to be litigated in the Northern District rather than the Southern District.  Furthermore, the locus of operative facts is in the Northern District.  None of the remaining factors weighs strongly in favor of plaintiff and most either weigh in favor of the defendants or are neutral.  Therefore, defendants have shown by clear and convincing evidence that the balance of conveniences favors transferring this case to the Northern District.

III. <u>CONCLUSION</u>

For the reasons stated above, the defendants have made a meritorious motion to transfer. The Court will delay issuing an order to transfer until after January 25, 2012, to allow plaintiff to

15

move for a stay in the event she seeks review of this Opinion and Order pursuant to Federal Rule

of Civil Procedure 72(a).  In the absence of an order granting such a stay, however, the Court

will direct the Clerk, by separate order, to effectuate the transfer on or after January 25, 2012.

Dated: January 10, 2012
      New York, New York

 

GABRIEL W. GORENSTEIN
United States Magistrate Judge

move for a stay in the event she seeks review of this Opinion and Order pursuant to Federal Rule

of Civil Procedure 72(a).  In the absence of an order granting such a stay, however, the Court

will direct the Clerk, by separate order, to effectuate the transfer on or after January 25, 2012.

Dated: January 10, 2012
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge